UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                                             Docket No. 18-CR-578-01 (AJN)

        Plaintiff,

   -against-


GERARD SCPARTA,

        Defendant.

-------------------------------------------------------------------x


**EMERGENCY APPLICATION FOR MODIFICATION OF SENTENCE PURSUANT TO**

**18 U.S.C. § 3582(c)(1)(A)(i) AS A RESULT OF COVID-19**

1

## **PRELIMINARY STATEMENT**

Given the imminent danger posed by the COVID-19 pandemic, Gerard Scparta respectfully submits the instant application pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for purposes of requesting the Court decrease Mr. Scparta's sentence from 18 months to time served with an additional period of home confinement at the Court's discretion.

Mr. Scparta is presently serving out the remainder of his sentence at FCI Butner with a scheduled BOP release date of December 28, 2020. Pursuant to 18 USC § 3624(c)(2), Mr. Scparta will be eligible for transfer to a halfway house in just several weeks (e.g. in or about June 2020) followed by a period of home confinement shortly thereafter (e.g. in or about October 2020).

On April 6, 2020, the Raleigh North Carolina News & Observer published the enclosed article **"Coronavirus Cases Surge at Butner Prison Complex in NC"** (Exhibit A) which confirms the following distressing circumstances at FCI Butner:

> *"The number of people at the Federal Correctional Complex in Butner who have tested positive for the coronavirus surged dramatically over the weekend, the director of Granville and Vance counties' public health department said Monday.*
>
> *Public Health Director Lisa Macon Harrison said 59 people have tested positive at the complex, nearly five times what the federal Bureau of Prisons reported over the weekend. On Monday evening, the Bureau of Prisons reported most of the new cases, listing 54 inmates and one staff member as testing positive.*

> *"We certainly have an outbreak situation at Butner's prison….It is very worrisome. It definitely is keeping me up at night."*
>
> *Prison officials there have not requested medical supplies such as masks or shields from her department, she said. The resources she has, she said, are largely tied up fighting the virus in Vance and Granville's communities.*
>
> *"We are very, very, very busy doing the work of public health in our own local communities and we do not have a lot of resources to spare to offer up to the federal prison system," she said…*

In this environment, Mr. Scparta has no personal protective equipment. Likewise, because products containing alcohol are not permitted within Bureau of Prisons facilities, we are informed he has no access to alcohol-based hand sanitizers despite those being the most effective way to kill the virus as well as sanitize hands and surfaces.

North Carolina Public Health Director Lisa Macon Harrison is thus not the only one being kept up at night as COVID-19 begins to ravage through FCI Butner. Mr. Scparta, his wife and children are all terrified. Indeed, the undersigned spent most of the night drafting the instant application to the Court given its time sensitive nature as well as potential life and death consequences.

Mr. Scparta is 55 years old and suffers from chronic medical conditions (high blood pressure and sleep apnea) which make him particularly vulnerable to COVID-19 infection as well as serious complications including death. Indeed, WEBMD confirms "*If you have high blood pressure, it's a good idea to take extra care to protect yourself during the coronavirus*

3

*(COVID-19) outbreak. Early research shows that people with the condition may be more likely to: Get COVID-19, have worse symptoms and die from the infection*"[1].

Although Mr. Scparta was sentenced by this Court following his acceptance of responsibility to 18 months, his life is now in grave danger. We respectfully submit that the exigency caused by this deadly unseen pathogen presents extraordinary and compelling reasons to take action. Our own urgent requests to the Bureau of Prisons have thus far proved an exercise in futility. This has included email as well as facsimiles to FCI Butner repeatedly requesting that the BOP make a motion to the Court pursuant to 18 U.S.C.§ 3582(c)(1)(A)(i) (Exhibit B). No response whatsoever has been received. Likewise, a series of phone calls to Mr. Scparta's Case Manager at FCI Butner have gone unreturned. Quite candidly, it appears that no remedial measures will be taken before irreparable injury to Mr. Scparta can occur.

Accordingly, we respectfully request that the Court issue an Order pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to decrease Mr. Scparta's sentence so that he may be immediately placed on home confinement to serve the remaining of any sentence there. Such action may save his life.

Please note that the undersigned counsel conferred with the Office of United States Attorney regarding the instant application by way of emails dated April 6, 2020 and was advised the Government "*will plan to respond to the motion once it is filed*".

## DISCUSSION

**A.     LEGAL STANDARD**

Pursuant to 18 USC § 3582(c)(1)(A)(i), the Court maintains the discretion to modify a previously imposed term of imprisonment *"... after considering the factors set forth in section*

---

[1] Webmd.com/lung/coronavirus-high-blood-pressure#1

*3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction.*" 18 USC § 3582(c)(1)(A)(i).

**B.     OFFENSE AND SENTENCE**

On April 15, 2019, Mr. Scparta pleaded guilty to before Your Honor to Counts 1 and 4 of a four count Superseding Information. Count 1 charged that Mr. Scparta fraudulently obtained Social Security disability benefits to which he was not entitled in violation of 18 U.S.C. 641. Count 4 charged that Mr. Scparta attempted to evade and defeat the payment of a substantial part of the income taxes due and owed in violation of 26 U.S.C. 7201.

On August 12, 2019, the Court sentenced Mr. Scparta to eighteen months' incarceration and he voluntarily surrendered to Bureau of Prisons custody on September 20, 2019. Mr. Scparta has served the entirety of his sentence thus far without incident.

With a December 28, 2020 release date looming Mr. Scparta is eligible for transferred to a halfway house in just several weeks (e.g. in or about June 2020) as well as placed on home confinement within several months thereafter (e.g. in or about October 2020) pursuant to 18 USC § 3624(c)(2)[2].

**C.     THE COVID-19 PANDEMIC WARRANTS IMMEDIATE REDUCTION OF MR. SCPARTA'S SENTENCE TO PROTECT HIM AND OTHERS FROM THE DEADLY VIRUS**

The high risk of contracting COVID-19 due to the conditions at FCI Butner where Mr. Scparta remains housed warrants an immediate reduction of his sentence to 7 months so that he

---

[2] In accordance with 18 USC § 3624(c)(2), BOP policy requires prisoners to be placed "*in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.*" Id.; see also BOP Operations Memorandum 001-2019, "Home Confinement under the First Step Act", 4/4/2019 (https://www.bop.gov/policy/om/001-2019.pdf).

5

can be immediately transferred to home confinement. We respectfully submit that the circumstances created by COVID-19 present "*extraordinary and compelling reasons*" that "*warrant such a reduction*" as contemplated by 18 USC § 3582(c)(1)(A)(i).

As of April 7, 2020, the new strain of coronavirus which causes COVID-19, has infected over 1,363,365 people leading to at least 76,420 deaths worldwide with the United States now leading the world with 369,069 confirmed cases and 11,008 deaths[3].

On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic[4]. North Carolina Governor Roy Cooper declared a State of Emergency on March 10, 2020[5]. President Trump declared a State of Emergency for the Nation on March 13, 2020[6]. The town of Butner, North Carolina issued a state of emergency declaration on March 23, 2020 in response to the COVID-19 pandemic[7].

As of April 6, 2020, there were 3,221 positive cases in North Carolina with 46 deaths[8]. A team of epidemiologists and data scientists from North Carolina's top universities and research institutions has however now released new models forecasting a large spike in COVID-19 cases across the state with the three independent models using composite estimates to indicate roughly 750,000 people being infected by the novel coronavirus in the State by June 1, 2020.[9] Likewise,

---

[3] Foxnews.com (continuously updated).
[4] WHO Characterizes COVID-19 as a Pandemic, World Health Organization (March 11, 2020) at https://bit.ly/2W8dwpS.
[5] Governor.nc.gov/news/governor-cooper-declares-state-emergency-respond-coronavirus-covid-19
[6] Whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak.
[7] Butnercreedmoornews.com/stories/granville-butner-creedmoor-under-state-of-emergency,204439
[8] Ncdhhs.gov/divisions/public-health/covid19/covid-19-nc-case-count
[9] Portcitydaily.com/local-news/2020/04/06/new-covid-19-model-750000-possible-cases-restrictions-might-be-needed-for-two-months

these models also show North Carolina's hospitals will become overwhelmed by COVID-19 in the absence of social distancing measures[10].

The CDC has now recommended that "*for the next 8 weeks, organizers cancel or postpone in-person events that consist of 50 people or more throughout the U.S.*"[11] With confirmed cases in North Carolina - and FCI Butner in particular - indicating accelerating community spread, every necessary action to protect vulnerable individuals as well as the community at large is warranted. This entails following the CDC's guidance that individuals at higher risk of contracting COVID-19 take immediate preventative actions including avoiding crowded areas and staying home as much as possible. This is of particular importance to individuals with chronic medical conditions such as Gerard Scparta. As Mr. Scparta's physician confirms in the enclosed letter, he suffers from high blood pressure (Exhibit C) – a condition which we are advised necessitated the BOP's incorporation of two additional medications into his regimen just in the last week. Echoing the sentiment of Mr. Scparta's physician, WEBMD confirms "*people with the condition may be more likely to: Get COVID-19, have worse symptoms and die from the infection*"[12].

In addition, while individuals with chronic medical conditions such as Gerard Scparta are at heightened risk for COVID-19, data from the CDC also demonstrates that individuals within his immediate age group (45 to 55) represent approximately 18% of patients hospitalized[13].

---

[10] Abc11.com/coronavirus-nc-cases-covid-19/6081002/
[11] Interim Guidance for Coronavirus Disease 2019 (COVID-19)", CDC (March 15, 2020) at https://www.cdc.gov/coronavirus/2019-ncov/index.html.
[12] Webmd.com/lung/coronavirus-high-blood-pressure#1
[13] Npr.org/sections/coronavirus-live-updates/2020/03/19/817944444/coronavirus-hits-older-people-hardest-but-millennials-gen-xers-can-be-vulnerable

As detailed throughout Exhibit A and this correspondence, conditions at FCI Butner create an ideal environment for the transmission of contagious disease[14]. According to public health experts, incarcerated individuals "*are at special risk of infection, given their living situations*," and "*may also be less able to participate in proactive measures to keep themselves safe*" making "*infection control challenging in these settings*."[15]

The current pandemic caused by the spread of COVID-19 therefore gives rise to serious concerns for individuals with chronic medical conditions such as Mr. Scparta inasmuch as COVID-19 not only spreads "*between people who are in close contact with one another (within about 6 feet) through respiratory droplets produced when an infected person coughs or sneezes*"[16] but also through talking or merely breathing[17]. Moreover, individuals who have contracted the virus may not show symptoms for 10-12 days yet remain contagious during that time – able to infect everyone they interact with. This asymptomatic transmission makes the COVID-19 virus particularly dangerous as its carriers are often unaware of their own infection.

Furthermore, "*coronavirus demonstrates high robustness and a strong capability to survive outside the body and can remain infectious for up to 60 minutes after aerosolization.*"

---

[14] Joseph A. Bick (2007). Infection Control in Jails and Prisons. Clinical Infectious Diseases 45(8):1047-1055, at https://doi.org/10.1086/521910.

[15] Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[16] Coronavirus disease 2019 (COVID-19) and you", CDC (March 15, 2020), at https://www.cdc.gov/coro-navirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

[17] Cnn.com/2020/04/02/health/aerosol-coronavirus-spread-white-house-letter/index.html

This includes the alarming ability to rapidly spread from fomites (objects or materials that are likely to carry infections) such as bathroom taps, food trays and clothes[18].

The conditions for residents of Butner create a grave risk of exposure to COVID-19 inasmuch as the FCI houses inmates in close proximity to others. Indeed, we are advised Mr. Scparta's dorm which traditionally holds 75 individuals now has 100 people cramped into the same space. In addition, FCI Butner's sizable amount of staff members move in and out of the facilities on a daily basis as well as back and forth into the local community.

Mr. Scparta is thus necessarily compelled to have close proximity interactions with numerous residents as well as staff members on a daily basis, thereby increasing his risk of being infected or infecting others if he were to become infected. As with all BOP facilities, inmates are not provided access to alcohol-based hand sanitizer which is currently the most effective way to kill the virus and sanitize hands and surfaces. Likewise, he has no access to personal protective equipment.

It is for this reason that we request Mr. Scparta be allowed to serve the remainder of his sentence ending on December 28th of this year on home confinement. Home confinement promotes social distancing which is the primary means to save lives by reducing transmission of this deadly pathogen. By permitting Mr. Scparta to move to home confinement, the risk that he will get the virus from other inmates – as well as the risk that other inmates might get it from him - will be entirely eliminated.

---

[18] Indirect Virus Transmission in Cluster of COVID-19 Cases, Wenzhou, China, 2020", Emerging Infec¬tious Diseases, 3/12/20, Volume 26, Number 6-June 2020, CDC (March 15, 2020), at https://wwwnc.cdc.gov/eid/article/26/6/20-0412_article.

As Your Honor is aware, a series of federal judges have already taken action in light of the extraordinary danger inmates face in BOP facilities. By way of example, on March 18, 2020, Your Honor reversed your own prior bail denial, specifically citing the high risk of COVID-19 infection in jail and prison populations:

> *"[S]ince the March 6 hearing, the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent.*
>
> *Although there is not yet a known outbreak among the jail and prison populations[19], inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop. See, e.g., Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); see also Claudia Lauer & Colleen Long, US Prisons, Jails On Alert for Spread of Coronavirus, Associated Press (Mar. 7, 2020). The magnitude of this risk has grown exponentially since the March 6 hearing before this Court; at the end of the day on March 6, New York State had 44 confirmed cases of COVID-19, see Andrew Cuomo (@NYGovCuomo), Twitter (Mar. 6, 2020, 4:51 PM), https://twitter.com/NYGovCuomo/status/1236046668220567553, but by the end of the day on March 18, that number had climbed to 2,382, see Mitch Smith, et al., Tracking*

---

[19] Your Honor wrote this Opinion on March 18, 2020 – less than three weeks ago. There are now an entire series of known outbreaks among the jail and prison populations including at the very facility Mr. Scparta is housed in – FCI Butner Medium – as detailed throughout Exhibit A.

*Every Coronavirus Case in the U.S.: Full Map, N.Y. Times, Mar. 18, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html. Though the BOP has admirably put transmission mitigation measures in place, see Federal Bureau of Prisons, Federal Bureau of Prisons COVID- 19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an outbreak at the Metropolitan Correctional Center ("MCC") (where the Defendant is currently being detained), substantial medical and security challenges would almost certainly arise. A comprehensive view of the danger the Defendant poses to the community requires considering all factors—including this one—on a case-by-case basis. See, e.g., United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar. 12, 2020) (deciding to continue a criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Magistrate Judge's recognition of the fact that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community").*

> <u>United States v. Stephens</u>, No. 15-cr-95 (AJN), 2020 US Dist LEXIS 47846, at *3-5 (SDNY Mar. 18, 2020).

Similarly, on March 27, 2020, Judge Schofield of the Southern District of New York reduced the sentence of a halfway house inmate by four months in <u>United States vs. Damian Campagna</u> (16CR00078 Docket No. 135) for purposes of granting him home confinement predicated upon the following:

"*Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to*

> *Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC. U.S.S.G. § 1B1.13, Application Note 1(A). The Court further agrees with the Government that the Defendant does not pose a danger to the safety of any other person or to the community -- particularly since he has been working in the community and visiting his family without issue during his residence at the RCC - - and that a substitution of home incarceration for the remaining four months of Defendant's confinement in the RCC satisfactorily addresses the relevant § 3553(a) factors, particularly in light of his approaching release. It is further ORDERED that Defendant's sentence is modified to replace his outstanding term of imprisonment with an equal period of home incarceration, in addition to the previously-imposed period of supervised release. Specifically, his term of incarceration is amended to conclude forthwith, and his conditions of supervised release are amended to add the condition of home incarceration for what would have been the remainder of his term."*

We respectfully submit that Gerard Scparta is a prime candidate for the requested relief. The instant non-violent offenses represent his lone contact on the wrong side of the criminal justice system throughout his entire life. Indeed, Mr. Scparta had been a decorated New York City Police Officer for over a decade. Of additional relevance, as detailed within his Sentencing Memorandum, Scparta subsequently participated in rescue, recovery and cleanup operations at the World Trade Center site throughout the month of September 2011 – the last crisis this country has experienced of a magnitude that can be argued to be analogous to the present pandemonium.

Prior to his current incarceration, Gerard Scparta spent over a year under the supervision of the Pretrial Services Department without incident. We are similarly informed that he has maintained an unblemished record in prison.

The totality of these circumstances reflect Mr. Scparta's personal level of respect and responsibility and militate in favor of the requested modification of his sentence and means of detention.

Indeed, Mr. Scparta is willing to implement any additional measures deemed necessary to reassure the Court and/or Bureau of Prisons of his whereabouts and compliance with the remainder of his sentence including wearing an ankle monitor at all times at his own expense.

Consistent with the foregoing, Mr. Scparta respectfully requests that Your Honor resentence him to time served plus an additional period of home confinement at the Court's discretion.

### D. EXHAUSTION SHOULD BE EXCUSED AS FUTILE AND BECAUSE DOING SO WILL CAUSE IRREPARABLE INJURY

Due to the recent enactment of 18 U.S.C. § 3582(c)(1)(A)(i) as part of the First Step Act, there is little, if any, case law interpreting the exhaustion requirement. Generally speaking however, *"[e]xhaustion of administrative remedies is required for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.'* Moscato, 98 F.3d at 761-62. Courts routinely excuse exhaustion when it would not promote these goals. See, e.g. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner showing futility) [...] Carling v. Peters, No. Civ.

13

A 00-CV-2958, 2000 U.S. Dist. LEXIS 10288, WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion excused where delay would subject petitioner to irreparable injury)." Lindsay v. Williamson, 2007 US Dist LEXIS 54310, at *6-7 (MD Pa 2007). Additionally, Courts have found that, despite the exhaustion requirement, they may issue Orders under the above circumstances, "*because the exhaustion doctrine is based upon comity and not jurisdiction*" Williams v. James, 770 F Supp 103, 106 (WDNY 1991) (citing Wheeler v. Kelly, 639 F. Supp. 1374, 1377 (E.D.N.Y. 1986), aff'd, 811 F.2d 133 (2d Cir. 1987)).

Furthermore, a series of federal appellate courts have held that the language of that subsection is nonjurisdictional while interpreting a different portion of 18 U.S.C. § 3582 (c). United States v. Taylor, 778 F.3d 667, 671 (7th Cir. 2015) ("*[Section] 3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment. . . [n]or is subsection (c) phrased in jurisdictional terms*."); see also United States v. Calton, 900 F.3d 706, 711 (5th Cir. 2018) (citing United States v. Caraballo-Martinez, 866 F.3d 1233, 1243 (11th Cir. 2017); May, 855 F.3d at 274; United States v. Anderson, 772 F.3d 662, 667 (11th Cir. 2014); United States v. Beard, 745 F.3d 288, 291 (7th Cir. 2014); United States v. Trujillo, 713 F.3d 1003, 1005 (9th Cir. 2013); Weatherspoon, 696 F.3d at 421); see also United States v. Green, 886 F.3d 1300, 1306 (10th Cir. 2018). Consistent with such philosophy, we submit that subsection (c) should likewise not be interpreted to impose jurisdictional requirements. Thus, while certain prior precedent regarding compassionate release under earlier versions of the statute may have created an ongoing requirement for defendants to have the BOP file compassionate release motions before filing on their own, any such waiting period cannot presently be understood as a jurisdictional requirement.

Moreover, in United States v. Ebbers, No. S402 Cr. 11443, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020), the Court recently observed that "*because no statute directs the Court to consult the BOP's rules or guidelines, see 28 C.F.R. pt. 571, subpt. G, and no statute delegates authority to the BOP to define the statutory requirements for compassionate release, the Court finds the BOP Guidelines to be inapposite*" and citing cases). *"[T]he majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously given to the BOP Director, and therefore the Court may independently evaluate whether [defendant] has raised an extraordinary and compelling reason for compassionate release.*" United States v. Lisi, No. 15 Cr. 457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), reconsideration denied, No. 15 Cr. 457, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) (citing cases and finding the existence of an extraordinary and compelling reason that is not specifically enumerated in the Application Notes).

With our own repeated attempts to contact FCI Butner by email, fax and phone having proved to be an exercise in futility notwithstanding the existence of a well-publicized COVID-19 outbreak at the facility, irreparable injury to Mr. Scparta is imminent.

Accordingly, we respectfully submit that the Court may Order the requested sentence modification without requiring Mr. Scparta to exhaust any administrative remedies inasmuch as exhaustion would be both futile as well as lead to irreparable injury as detailed above.

## **CONCLUSION**

For the foregoing reasons, we respectfully request this Court modify Mr. Scparta's sentence from 18 months to time served with an additional period of home confinement at the Court's discretion. We believe that the requested relief represents an appropriate and humane

approach to dealing with a pandemic and national emergency of this magnitude. In the absence of same, Mr. Scparta's remaining eight months in BOP custody – which would have necessarily included approximately four and a half months residency in a halfway house followed by approximately a month and a half of home confinement – could potentially serve as death sentence in light of his chronic health ailment.

Dated: Brooklyn, New York
      April 8, 2020

                                        Respectfully Submitted,

                                        *Joseph Mure, Jr.*

                                        Joseph Mure, Jr., Esq.

cc:    AUSA Sagar Ravi (via ECF)