
U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 10, 2020

**BY ECF & EMAIL**
The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>United States</u> v. <u>Gerard Scparta</u>, S1 18 Cr. 578 (AJN)

Dear Judge Nathan:

      The Government respectfully submits this response in opposition to the emergency motion filed on April 8, 2020 by the defendant Gerard Scparta for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic. (ECF No. 51 ("Def. Mem.").) On April 9, 2020, the Court ordered the Government to respond by April 10, 2020 at 12:00 p.m. and include answers to the following questions: (1) Will the Government waive compliance with the statutory exhaustion requirement in Section 3582(c)(1)(A)(i)?; and (2) Has the Government considered release of the defendant pursuant to the furlough statute, 18 U.S.C. § 3622?

      As explained further below, the Government does not believe this is an appropriate case to waive compliance with the statutory exhaustion requirement. Because less than 30 days have elapsed since the defendant made any request for a reduced term of imprisonment to the Bureau of Prisons ("BOP") at FCI Butner Medium I where he is presently confined, this Court lacks statutory authority at this juncture to grant Scparta's request to modify his sentence and have him transferred immediately to home confinement pursuant to Section 3582(c). Finally, the Government has considered 18 U.S.C. § 3622 and determined that the authority granted by that statute to temporarily release a defendant resides solely in the BOP, not the Government and not the Court.

**I.    BACKGROUND**

      **A.    Scparta's Criminal Conduct and Sentencing**

      For over twenty years, from at least 1997 through 2017, Gerard Scparta, a former New York City Police Department Officer ("NYPD"), defrauded the Social Security Disability Insurance ("SSD") program by obtaining over $630,000 in SSD benefits to which he was not

entitled through false statements in his initial application for benefits and repeated lies thereafter to the Social Security Administration ("SSA") about his purported inability to work due to an invented disability.

In May 1998, Scparta worked with a coconspirator to submit an application for SSD benefits which contained false statements that the defendant suffered from severe depression and anxiety, could not do anything around the house, and was unable to work in any capacity. Notably, in order to provide medical documentation supporting his purported disability, the defendant also made false statements to physicians that examined him, such as by pretending that he did not know where he was. Based on the false statements and representations in the SSD application that the defendant submitted, he began receiving SSD benefits from March 12, 1999 onward.

Beginning in April 2004 and through 2017, while the defendant was continuing to receive SSD benefits based on his purported disability, the defendant worked at a strip club in Manhattan (the "Strip Club"), first as a security guard or "bouncer" and then as an independently contracted host. During his work as a host, for the period from 2009 to 2016, the defendant earned gratuities totaling over $1.6 million, while he was also receiving SSD benefits. Despite working both as a security guard and host for more than ten years from 2004 to 2017 and receiving periodic notices from the SSA informing him of the requirement to report if he returned to work, Scparta did not inform the SSA that he was working, as he was required to do. Instead, the defendant affirmatively lied to the SSA multiple times about his inability to work due to disability so that he could continue to receive hundreds of thousands of dollars in SSD benefits.

Importantly, Scparta was never paid directly for his work at the Strip Club, but rather was paid through a limited liability company called M.E.S. Consulting, LLC ("MES Consulting"), which was registered to Scparta's wife even though his wife did not work at the Strip Club. On the tax returns that the defendant filed jointly with his wife, his wife was listed as the "Proprietor" and only employee of MES Consulting. Scparta and his wife represented to their tax preparer that Scparta's wife provided security at the Strip Club, and that Scparta was unable to work for MES Consulting due to his disability. By using MES Consulting, which was registered to his wife, the defendant sought to ensure that his work activity would not be disclosed to the Government on his tax returns. Moreover, along with concealing the source of the income, Scparta underreported the income he earned by a total of $268,602 for the years from 2012 to 2016.

On April 15, 2019, Gerard Scparta pled guilty to (1) theft of public funds, in violation of 18 U.S.C. § 641; and (2) tax evasion, in violation of 26 U.S.C. § 7201. Based on a total loss from the offenses of approximately $726,517 and other enhancements for sophisticated conduct, the parties agreed that the U.S. Sentencing Guidelines range was 30 to 37 months, which was adopted by the Court.

On August 9, 2019, the Court sentenced Scparta to 18 months in prison followed by three years of supervised release. The defendant was ordered to surrender on September 20, 2019, and his projected release date is in approximately eight months on December 28, 2020, reflecting good-time credit. Scparta has therefore served a little more than half of his sentence.

B.     Scparta's Requests for Compassionate Release

On April 6, 2020, at approximately 6:38 p.m., counsel for Scparta emailed and faxed a letter to FCI Butner Medium I requesting release to home confinement, raising substantially the same arguments as was raised in his motion to the Court. (*See* Def. Mem., Ex. B.)

Two days later, on April 8, 2020, Scparta's counsel filed the instant Emergency Application for Modification of Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that the Court resentence him to "time served with an additional period of home confinement at the Court's discretion." (Def. Mem. at 2.) Scparta requests such relief primarily because (1) he is "55 years old and suffers from chronic medical conditions (high blood pressure and sleep apnea) which make him particularly vulnerable to COVID-19 infection and well as serious complications including death" (*id.* at 3); and (b) "[t]he conditions for residents of Butner create a grave risk of exposure to COVID-19" in light of the large number of inmates and staff who have tested positive at the prison (*id.* at 2-3, 9). Finally, Scparta also argues that the exhaustion of administrative remedies required in Section 3582(c)(1)(A) is not jurisdictional and that "exhaustion would be both futile as well as lead to irreparable injury." (*Id.* at 13-15.) As of the filing of Scparta's motion to the Court, defense counsel represented no response had been received from FCI Butner.

## II.     APPLICABLE LAW

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Prior to the enactment of the First Step Act, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the BOP asking that the court consider such modification. *See, e.g., United States v. Goode*, No. 14 Cr. 810 (CM), 2020 WL 58272, *1 (S.D.N.Y. Jan. 6, 2020).

On December 21, 2018, Congress passed the First Step Act, Pub. L. No. 115-391, which amended 18 U.S.C. § 3582(c)(1) to permit a court to consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner:

> The court <u>may not modify a term of imprisonment once it has been imposed except that</u>, . . . the court, upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, <u>may reduce the term of imprisonment</u> . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the Sentencing Guidelines. The Court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that

3

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

### III. ARGUMENT

Based on the representations by defense counsel and the defendant's physician, the Government does not contest that Scparta has risk factors that make him susceptible to COVID-19 and that FCI Butner Medium I has had a significant number of inmates and staff test positive for COVID-19, namely 44 inmates and 16 staff as of the morning of April 10, 2020 according to BOP's website. Nevertheless, the Government does not believe this is an appropriate case to waive compliance with the statutory exhaustion requirement because the defendant is not currently ill, has significantly more than 30 days remaining on his sentence, and the BOP has implemented extensive national measures to mitigate the spread of COVID-19 within prisons.[1] Further, the U.S. Attorney General has directed the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[2] Accordingly, the BOP should be afforded the time required by statute to address Scparta's request for release to home confinement, and at this juncture, the Court lacks statutory authority to modify Scparta's sentence until the defendant has exhausted his administrative remedies or 30 days have passed.

#### A. This Court Presently Lacks Authority to Grant Defendant's Request Under 18 U.S.C. § 3582(c)

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. The plain text of the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)—a narrow exception to the general rule of finality—limits this Court's authority to consider a reduction of the term of a defendant's imprisonment to two situations: (i) "upon motion of the Director of the Bureau of Prisons"; or (ii) "upon motion of the defendant after the defendant has <u>fully exhausted all administrative</u>

---

[1] *See* Federal Bureau of Prisons COVID-19 Action Plan, *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp. As of April 1, BOP has implemented Phase Five of its plan, which includes that inmates will be secured in their assigned quarters for a 14-day period to decrease the spread of the virus. *See* COVID-19 Action Plan: Phase Five, *available at* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.

[2] *See* https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf (Mar. 26, 2020).

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden . . . whichever is earlier." *Id.* As of today, neither of those conditions apply. Consequently, the Court does not presently have the authority to grant the relief the defendant seeks, and "may not" modify his term of imprisonment.

Scparta submitted his request for compassionate release to the BOP on April 6, 2020, which means the BOP has until May 6, 2020 to respond to Scparta's request. If the BOP does respond in a timely fashion and denies Scparta's request, he is then required to "fully exhaust[ ] all administrative remedies," 18 U.S.C. § 3582(c)(1)(A), before this Court has the authority to consider his request. Section 3582(c)(1)(A)'s exhaustion requirement is mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The vast majority of district courts have also required

exhaustion despite COVID-19 claims.[3] These decisions are consistent with the plain language of Section 3582(c).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). As Your Honor has recognized, this 30-day alternative rule is a "built-in futility exception," and thus "the case for carving out an equitable exception here is weak." *United States v. Gross*, No. 15 Cr. 769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020); *see also Roberts*, 2020 WL 1700032, at *2 (noting that the 30-day period is a "limited futility-like exception," and, therefore, "[g]iven Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a general unwritten special circumstances exception." (internal quotation marks omitted)); *United States v. Arena*, No. 18 Cr. 14 (VM) (S.D.N.Y. Apr. 6, 2020) (stating that there is "simply no authority that permits [the defendant] to circumvent the administrative exhaustion requirement" based on a claim of futility, because the ability to seek relief after 30 days constitutes "an express futility provision"). Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential.

---

[3] *See United States v. Roberts*, No. 18 Cr. 528 (JMF) (S.D.N.Y. Apr. 8, 2020) (Dkt. 296); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Arena*, No. 18 Cr. 14 (VM) (S.D.N.Y. Apr. 6, 2020) (Dkt. 354); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020); *United States v. Clark*, No. 17 Cr. 85 (SDD), 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart,* No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). Both *Perez* and *Colvin* relied on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), which is inapposite because it involves judge-made exhaustion doctrine.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The Court may of course review those judgments, but Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment. *See United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020) ("If the BOP denies a defendant's application, the BOP's decision may inform the Court of why the agency does not consider the relief warranted. The present national health emergency makes thoughtful and considered input from the BOP all the more valuable in avoiding unwarranted disparities among convicted defendants."). To ignore this mandatory exhaustion requirement would be legal error.[4]

Accordingly, because Congress, through the plain text of 18 U.S.C. § 3582(c)(1)(A), has explicitly limited the authority of the courts to modify a term of imprisonment once it has been imposed to cases in which the statutory requirement of exhaustion has been met, this Court lacks the authority to order the relief that Scparta seeks until he has exhausted all administrative remedies or the 30-day period has passed.

### B. Temporary Release Under 18 U.S.C. § 3622 Committed to Sole Discretion of BOP

The Court ordered the Government to respond whether the Government has considered release of the defendant pursuant to the furlough statute, 18 U.S.C. § 3622. Section 3622 provides that the "Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission . . . ." 18 U.S.C. § 3622. Authority under Section 3622 "is committed to sole discretion of the BOP." *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020) ("As virtually every court to consider the question appears to have held, [t]he statute could not be clearer as to whom it vests with the authority to grant temporary release .... [It] gives authority over temporary-release decisions to the Bureau of Prisons (BOP), not the federal courts." (internal quotation marks omitted) (collecting cases)). Accordingly, while the Government has considered temporary release under Section 3622, the Government has determined that only the BOP has the authority to grant such release.

---

[4] The cases cited by Scparta are inapposite and do not even address the exhaustion requirement, but rather whether the Court can independently review BOP's determination as to whether a claim for release satisfies the standard of "extraordinary and compelling," which it can. (*See* Def. Mem. at 15); *United States v. Ebbers*, No. 02 Cr. 02 Cr. 1144 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Lisi*, No. 15 Cr. 457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).

7

### C. Whether Scparta Has Established "Extraordinary and Compelling Reasons" Warranting Immediate Release

As the BOP has not yet made a determination as to whether Scparta's motion for immediate release under Section 3582(c) should be granted, the Government awaits that determination before taking a position on whether Scparta has established "extraordinary and compelling reasons" warranting such relief.

### IV. CONCLUSION

For the foregoing reasons, Scparta's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and for immediate release should be denied at this time.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: *Sagar K. Ravi*
Sagar K. Ravi
Assistant United States Attorney
(212) 637-2195

cc: Joseph Mure, Jr., counsel for defendant Gerard Scparta