

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 14, 2020

**BY ECF & EMAIL**
The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: United States v. Gerard Scparta, S1 18 Cr. 578 (AJN)

Dear Judge Nathan:

In connection with the defendant Gerard Scparta's motion for compassionate release in light of the ongoing COVID-19 pandemic (ECF No. 51 ("Def. Mem.")), the Government respectfully submits this supplemental letter answering the following question posed by the Court: "If the Court deems exhaustion waivable, or the Bureau of Prisons' 30-day period to respond to Defendant's motion lapses, is he entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)?" As the Government's letter dated April 10, 2020 set forth (ECF No. 52), because the defendant failed to exhaust his administrative remedies as required by Section 3582(c)(1)(A) and less than 30 days have passed since his request for release to the Bureau of Prisons ("BOP"), the Court lacks statutory authority at this juncture to grant his motion. Nevertheless, should the Court reach the merits of the defendant's motion, the motion should be denied because the defendant has not met his burden to demonstrate compelling and extraordinary reasons warranting immediate release to home confinement.

**I. APPLICABLE LAW**

The Court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," and that the proposed reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Importantly, the First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. §3582(c)(1)(A) and Section 1B1.13 of the U.S. Sentencing Guidelines. *See United States v. Ebbers*, No. 02 Cr. 1144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("The First Step Act did not revise the substantive criteria for compassionate release . . . . Congress in fact only expanded access to the courts; it did not change the standard").

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. The Application Notes to Section 1B1.13 describe specific circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13, Application Note 1. These include an assessment of the defendant's medical condition, age, family circumstances, and other reasons:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 Application Note 1.

Further, regardless of the theory of "extraordinary and compelling reasons" under which a defendant proceeds, as noted above, the 18 U.S.C. § 3553(a) factors are relevant to whether release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

As the proponent of release, the defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

## II. ARGUMENT

Scparta has failed to meet his burden to demonstrate extraordinary and compelling reasons warranting immediate release to home confinement. The defendant does not claim to independently satisfy any of the extraordinary and compelling circumstances specified in U.S.S.G. § 1B1.13, in that (1) he does not suffer from a terminal illness or a condition that substantially diminishes his ability to provide self-care; (2) he is not at least 65 years old or experiencing a serious deterioration in physical or mental health because of the aging process; and (3) he is not the sole caregiver for his spouse or minor children. Rather, the defendant's claim is solely based on the fact that he is 55 years old and suffers from high blood pressure and sleep apnea, which he argues make him particularly vulnerable to COVID-19 infection. (Def. Mem. at 4.) Accordingly, because Scparta's claim relies on the risks to him from COVID-19, the Government will focus on those risks, which fall short of establishing extraordinary and compelling reasons warranting immediate release.

First, as the Government noted its previous letter, the BOP has implemented extensive national measures to mitigate the spread of COVID-19 within prisons,[1] and the U.S. Attorney General has directed that the BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the risk factors established by the Centers for Disease Control and Prevention ("CDC").[2] The BOP is devoting all available resources to assessing its inmate population to determine which inmates would be appropriate for transfer under this priority program and to then process those inmates for transfer as quickly as possible. It is the Government's understanding that the BOP is presently reviewing Scparta's request for transfer to home confinement, and the BOP should be afforded the opportunity to assess that request prior to the Court's intervention.

Second, although the facility where Scparta is officially listed as being housed, FCI Butner Medium I, has had a significant number of inmates and staff test positive for COVID-19,

---

[1] *See* Federal Bureau of Prisons COVID-19 Action Plan, *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp.

[2] *See* Memorandum for Director of BOP re Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, *available at* https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf (Mar. 26, 2020).

FCI Butner staff advised the Government yesterday that Scparta is actually being housed in a completely separate dormitory-style satellite camp (the "Camp") in which there have been no positive cases of COVID-19 to date.[3] This material fact was not included in Scparta's motion. While Scparta is not quarantined in the Camp, he is restricted to that separate housing unit and therefore is not being exposed to the inmates who have tested positive at FCI Butner Medium I. In addition to all of the significant efforts being made by the BOP to respond to COVID-19, the fact that Scparta is currently being restricted to a facility without any positive cases demonstrates that the BOP has effectively mitigated his risk of exposure. Importantly, Scparta has failed to establish how his placement in a restricted housing unit where there have been no positive cases would be less likely to expose him to COVID-19 than if he were out of prison and released into the New York City metropolitan area, where authorities could not enforce screening and quarantine as warranted.

Third, although the defendant's physician has indicated that he is at high risk for COVID-19, the defendant's claimed risk factors, namely age of 55, high blood pressure, and sleep apnea, are reasonably common and are not recognized by the CDC as those that would make him high-risk for severe illness from COVID-19.[4] ███████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████

---

[3] Because the Camp falls under the authority of the warden at FCI Butner Medium I, all Camp inmates fall under the official listing of FCI Butner Medium I. According to the BOP's website, there are 273 inmates at the Camp, compared with 641 inmates at FCI Butner Medium I. *See* https://www.bop.gov/locations/institutions/but/.

[4] *See* CDC, Coronavirus Disease 2019: Groups at Higher Risk for Severe Illness, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Scparta's motion does not cite to the CDC guidelines, but rather to an article on webmd.com. (Def Mot. at 3-4.)

[5] At the Government's request, on April 13, 2020, FCI Butner staff provided the Government with a copy of the defendant's BOP medical records for the period from January 1, 2020 to April 13, 2020. These records are attached hereto as Exhibit A and will be provided by email to both the Court and defense counsel. Page numbers referenced herein refer to the PDF page number given that internal page numbers are not continuous.

[6] 

4

Scparta has therefore failed to establish *both* that (1) he has a condition or characteristic that is a cognizable basis for compassionate release under U.S.S.G. § 1B1.13 (*e.g.*, a serious medical condition, debilitating condition, elderly offender with medical conditions, etc.), and (2) that any such condition or characteristic elevates his risk of becoming seriously ill from COVID-19 under the CDC guidelines.

Finally, the Section 3553(a) factors also counsel against immediate release. As the Court stated at sentencing:

> Mr. Scparta engaged in a two-decade long fraud by blatantly and repeatedly lying about a disability. He made false statements to doctors and feigned lack of memory and general dysfunction in order to have medical documentation supporting his false statements to the Social Security Administration. . . . Mr. Scparta repeatedly engaged in the lies that make up this criminal conduct not once or twice, not a momentary lapse of judgment, not even for a few years, but for 20 years. He continued with it several years after the arrest of fellow officers for the same conduct. . . . To steal from [the public welfare system] through lies and fraud must be punished. To cheat on taxes, part of which fund our social welfare programs, must be punished. The message of deterrence must be loud and clear, and here will be served by a serious sentence.

(Aug. 9, 2019 Sentencing Transcript at 21-23.) While the defendant was granted leniency in the form of an 18-month sentence significantly below the Guidelines range, that was a term this Court determined to be sufficient, but not greater than necessary, to comply with the factors under Section 3553(a), including, *inter alia*, the nature and circumstances of the offense and the history and characteristics of the defendant; the seriousness of the crime and just punishment; and adequate deterrence. The Section 3553(a) factors here demand that the defendant serve the entirety of his sentence.

At bottom, Scparta's argument for compassionate release is based on the fact that he suffers from reasonably common, though potentially serious, health conditions, and that he is located in a prison complex where there have been positive tests for COVID-19. For the reasons set forth above, the Government respectfully submits that, should the Court decide to address Scparta's motion on the merits at this time, his present circumstances do not constitute "extraordinary and compelling reasons" warranting his immediate release, and that any such release would be inconsistent with the factors under Section 3553(a) as well as U.S.S.G. § 1B1.13. *See, e.g., United States v. Pourghannad*, No. 13 Cr. 507 (VB) (S.D.N.Y. Apr. 13, 2020) (Dkt. No. 30) (denying compassionate release based on failure to exhaust administrative remedies and on the merits, because the defendant, who is 66 years old and suffers from "fairly common health conditions for a man of his age – non-insulin dependent diabetes and moderately elevated blood pressure," failed to establish extraordinary and compelling reasons and was being closely monitored and being provided appropriate treatment in prison); United *States v. Gileno*, No. 19 Cr. 161 (VAB), 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because the defendant, who allegedly suffered from high blood pressure, high cholesterol, asthma, and allergies, has *not* shown (1) "that his medical issues, which remain

largely the same as when he was sentenced, 'substantially diminish [his] ability ... to provide self-care' within the correctional facility," and (2) "that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within [defendant's] correctional facility, or that the facility is specifically unable to adequately treat [defendant].").

In the alternative, if the Court is inclined to nevertheless release Scparta immediately into home confinement, the Government respectfully requests that any release be subject to conditions that ensure that the defendant is being released to a situation that offers better protection against COVID-19 than a BOP setting and that protects the public from COVID-19 spread. Such a release should include a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from Scparta to the public.

### III. CONCLUSION

For the foregoing reasons, Scparta's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and for immediate release should be denied at this time.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Sagar K. Ravi
Assistant United States Attorney
(212) 637-2195

cc: Joseph Mure, Jr., counsel for defendant Gerard Scparta